# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

COLONY INSURANCE COMPANY,

              Plaintiff,

v.

JACK A. HALPRIN, INCORPORATED,
ROCHELLE MYRICK, ADMINSTRATRIX
OF THE ESTATE OF ENSLEY E.
MYRICK, TARA REED,
ADMINISTRATRIX OF THE ESTATE OF
JOSEPH E. REED, ANTHONY PERELLI,
CATWALK, LLC and MARKEASE HILL,

              Defendants.

3:10 - CV - 1059 (CSH)

July 11, 2012

## RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**HAIGHT, Senior District Judge:**

## I.        INTRODUCTION

Plaintiff Colony Insurance Company ("plaintiff" or "Colony") commenced this action for a

declaratory judgment that it has no duty to defend or indemnity its policy holder Jack A. Halprin, Inc.

("defendant" or "Halprin") in a separate pending state court civil action, captioned *Rochelle Myrick,*

*Administratrix of the Estate of Ensley E. Myrick, et al. v. Jack A. Halprin, Inc., et al.,* Docket No.

NNH-CV10-5033401-5 ( herein "Myrick Action").[1]  Doc. # 1 (Declaratory Judgment Complaint).

 In that action, Rochelle Myrick, Tara Reed, and Anthony Perelli ("Myrick," "Reed," and "Perelli"),

---

[1]The *Myrick Action was* filed on July 16, 2010 in Connecticut Superior Court in the
Judicial District of New Haven and remains pending as of the present date.

additional named defendants herein, seek to recover damages for the shooting deaths of Ensley

Myrick and Joseph E. Reed and the injuries inflicted upon Perelli by Markease Hill ("Hill") in the

parking lot of defendant's establishment known as the "Catwalk."[2]

Upon plaintiff's motion, due to the failure to appear or respond, the Court entered default

judgments against defendants Hill, Catwalk, Perelli, Myrick, and Reed. Doc. #44, 64. The action

thus remains pending solely against defendant Halprin.

Pending before the Court is plaintiff's motion for summary judgment pursuant to Federal

Rule of Civil Procedure 56(c). In that motion, plaintiff asserts that there is "no genuine issue of

material fact that the Colony policy of insurance is not answerable to any of the claims asserted

against Halprin in the Myrick lawsuit because these claims are excluded from coverage by operation

of the Assault and Battery Exclusion contained in the Colony insurance policy."[3]  Doc. #26, p. 3.


II.    **FACTUAL SUMMARY**

The Court has derived the following material facts from the parties' submissions, which

include, *inter alia*, the parties' Local Rule 56(a) Statements, supporting affidavits, and documents.

---

[2]The Catwalk is a restaurant and bar owned by Halprin located at  311 East Street in New Haven, Connecticut.  Doc. #27-1, First Count, ¶ 8.   According to plaintiff, the Catwalk is a "purveyor of adult entertainment, namely erotic and/or naked female dancers." *Id.*, ¶ 9.

[3]The insurance policy Colony issued to Halprin with respect to the premises of the Catwalk restaurant, Policy No. GL 3604231,  covered the period of July 16, 2007, to July 16, 2008. *See* Doc. #27-1 (herein "Colony Policy").   That policy contained an "assault and battery" exclusion for "bodily injury," "property damage," or "personal and advertising injury" resulting from, *inter alia*,  "[a]ssault and battery committed by any person."  *Id.*, p. 18, § 1(1)-(5).  Plaintiff relies on the "assault and battery" exclusion to maintain that the injuries for which the Myrick Action plaintiffs seek recovery are explicitly excluded from coverage by the Colony Policy.

A.   **Underlying/Myrick Action**

Plaintiffs in the underlying or Myrick Action (Myrick, Reed and Perelli) allege that Halprin owned, controlled, maintained, managed, possessed and supervised the property located at 311 East Street in New Haven, Connecticut (herein the "Catwalk Property"). Doc. #27-1 (Ex. A), Complaint, First, Second & Third Counts, ¶¶ 6-7.   The property was allegedly comprised of numerous establishments, including the Catwalk restaurant and a parking lot, providing parking for the establishments located on the property.  *Id.*, ¶¶ 8-10.   Specifically, Halprin allegedly maintained control, possession, and operation of the parking lot.  *Id.*, ¶ 11.

On June 11, 2008, at approximately 1:40 am, Myrick's decedent, Reed's decedent, and Perelli were business invitees present in the Catwalk parking lot.  *Id.,* ¶¶ 12, 18.  Myrick's and Reed's decedents were each shot and killed by Hill at that time.  *Id.,* ¶ 19.  Specifically, Myrick's decedent died after receiving gunshot wounds to his head and his ring finger, *id.*, First Count, ¶ 22; and Reed's decedent perished from a gunshot wound to his head, *id.*, Second Count, ¶ 22.   Hill also shot at Perelli, forcing him to flee for his life and safety.  *Id.,* Third Count, ¶ 20.  In fleeing, Perelli allegedly sustained muscular sprain and strains, bruises, contusions, lacerations and fear of death and grievous bodily harm as a result of the shooting.  *Id.,* ¶ 22.

The plaintiffs in the Myrick Action alleged that the injuries, damages and losses sustained by Myrick's and Reed's decedents and Perelli were caused by Halprin's negligence and carelessness in failing to (1) properly secure, maintain, supervise and inspect the parking lot; (2) properly and reasonably supervise, control and protect the individuals on the Catwalk premises, including the parking lot; (3) stop and prevent the illegal sale and use of narcotics, illegal consumption of alcohol, larceny and thefts, illegal sale of liquor, and physical violence on the premises, including the parking

lot; (4) place attendants, security personnel, and/or security devices in the parking lot or to take other

reasonable steps to protect the safety of individuals in the parking lot; (5) provide adequate security

personnel or to properly supervise or train any security personnel it did  provide;   (6) warn

individuals on the property that the parking lot was unsecured and/or unsupervised; (7) hire and

employ extra-duty uniformed police officers to protect individuals on the property; and (8) use and

implement security cameras in the parking lot, or if Halprin did so, to use cameras that were

properly positioned, properly functioning and/or hooked up or activated.  *Id.,*  First, Second and

Third Counts, ¶ 21 (a)-(x); Fourth, Fifth and  Sixth Counts, ¶ 22 (a)-(x); Seventh to Twelfth Counts,

¶ 15.

### B.   The Colony Policy

In 2007, Colony issued a policy of insurance, Policy Number GL3604231, to Jack A. Halprin,

Inc., effective for the period of July 16, 2007, to July 16, 2008.  *See* Doc.  #27-2, (Affidavit of

Carolyn Ford at ¶ 3) & Ex. 1 (Colony Policy).  That policy contains an explicit "Assault and Battery

Exclusion," which states that there is no insurance coverage for "damages or expenses due to 'bodily

injury,' 'property damage' or 'personal and advertising injury'  arising out of or resulting from:

(1)      Assault and Battery committed by any person;[4]

---

[4]In general, "assault" has been defined under the law as "[t]he threat or use of force on another that causes that person to have a reasonable apprehension of imminent harmful or offensive contact; the act of putting another person in reasonable fear or apprehension of an immediate battery by means of an act amounting to an attempt or threat to commit a battery." Black's Law Dictionary (9th ed. 2009).  "Battery" is generally defined as "[t]he use of force against another, resulting in harmful or offensive contact." *Id.*  The tort of assault is thus intended to protect an individual's  "interest in freedom from apprehension of a harmful or offensive contact with [another] person" and battery, encompassed by assault, further protects one "from intentional and unpermitted contact." 1 Am. Jur. Proof of Facts 3d 613 (1988, database update April 2012). "Generally, . . . a battery includes an act constituting an assault, and an assault is often an attempted

(2)    The failure to suppress or prevent assault and battery by any person;

(3)    The failure to provide an environment safe from assault and battery or failure to warn of the dangers of the environment which could contribute to assault and battery;

(4)     The negligent hiring, supervision, or training of any person;

(5)    The use of any force to protect persons or property whether or not the " bodily injury" or "property damage" was intended from the standpoint of the insured or committed by or at the direction of the insured."

Doc. #27-2, Ex. B, p. 18, , § 1 (¶¶ 1-5).

Colony is defending Halprin in the Myrick Action under a reservation of rights, awaiting the outcome of this motion. *Id.*, Ex. B, p. 2, ¶ 5. Colony contends that it is not answerable to the claims asserted against Halprin in the Myrick Action by virtue of the Assault and Battery Exclusion in the Colony Policy. Furthermore, Colony asserts that it "is entitled to a declaration that it has no duty to defend or indemnify Halprin in the Myrick lawsuit because the Myrick Plaintiffs allege injuries arising out of or resulting from an Assault and Battery." Doc. #27, p. 5.

## III.    <u>JURISDICTION</u>

This Court exercises subject matter jurisdiction over the present action based on diversity of citizenship under 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship between plaintiff and the remaining defendant, Halprin, and the amount in controversy exceeds $75,000.[5]

_____

battery." *Id.*

In Connecticut, "an actionable assault and battery may be one committed wilfully or voluntarily, and therefore intentionally; one done under circumstances showing a reckless disregard of consequences; or one committed negligently." *Alteiri v. Colasso*, 168 Conn. 329, (1975) (citing *Russo v. Porga*, 141 Conn.706, 708-09 (1954) and *Lentine v. McAvoy*, 105 Conn. 528, 531 (1927)).

[5]Plaintiff Colony is an insurance company incorporated in Virginia with its principal place of business in Richmond, Virginia. Doc. #1, p. 2 (¶2). Defendant Halprin is a Connecticut

Since the Court has subject matter jurisdiction over this action, it may render declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201.[6]

## IV.    DISCUSSION

### A.    Preliminary Matter – Plaintiff's Motion to Strike the Affidavit of Martin Halprin

As a preliminary matter, before addressing the pending summary judgment motion, the Court must turn its attention to plaintiff's motion to strike the affidavit of Martin Halprin ("Halprin Affidavit"), which defendant filed in support of its objection to plaintiff's summary judgment motion. *See* Doc. #40 (moving to strike the affidavit, which is Doc. #38). The affiant, Martin Halprin, is presumably a different individual from that Jack A. Halprin who gives his name to the corporate defendant. Martin Halprin identifies himself in ¶ 2 of his affidavit as "an authorized agent of Jack A. Halprin, Incorporated" who has "acted as a manager of the corporate affairs." According to the Halprin Affidavit, Martin Halprin arranged with Colony for the issuance to the defendant of the policy in suit. Plaintiff moves to strike "on the basis that the statements in the Halprin Affidavit are entirely irrelevant to the coverage issue before the Court and several of the statements also reflect conclusions or constitute hearsay." Doc. #39 (summarizing Doc. #40).

---

corporation with its principal place of business in New Haven, Connecticut. *Id.* (¶ 3).

[6]28 U.S.C. § 2201, captioned, "Creation of remedy," provides in relevant part:

(a) In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

Neither plaintiff's barebones notice of motion to strike the Halprin Affidavit nor its brief in support of that motion specifies the Federal Rule of Civil Procedure under which that relief is sought. The omission is not surprising, since there is no Rule providing for the striking of such a document in such a procedural context.

### 1.      Motion to Strike under Rule 12(f)

Pursuant to Federal Rule of Civil Procedure 12(f), a court may, *sua sponte* or upon motion, strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" from a party's pleading.  Such motions are nonetheless generally disfavored.  *See, e.g, Hathaway Motors, Inc. v. General Motors Corp.*, 19 F.R.D. 359, 360  (D. Conn. 1955) ("Motions to strike . . . are in disfavor");  *D'Agostino v. Housing Authority of City of Waterbury*, No. 3:05cv1057 (PCD), 2006 WL 1821355, at *2 (D. Conn. June 30, 2006) ("motions to strike are generally disfavored"); Wright & Miller, Fed. Practice & Procedure § 1380 ("[M]otions under Rule 12(f) are viewed with disfavor by the federal courts and are infrequently granted.").

"Most importantly, Rule 12(f) allows a court to strike pleadings only.  Declarations and affidavits are not pleadings." *Ricci v. Destefano*, No. 3:04 CV 1109 (JBA), 2006 WL 2666081, at *1 (D.Conn. Sept. 15, 2006) (internal quotations and citations omitted).   Therefore it is inappropriate to strike material contained in exhibits to motions. *Ricci*,  2006 WL 2666081, at *1. *See also Monroe v. Board of Ed. of Town of Wolcott*, 65 F.R.D. 641, 645 (D. Conn.1975) ("A rule 12(f) motion to strike is not strictly proper in this instance, for the record of the . . . hearing [attached to opposition to summary judgment] is not a 'pleading.'").

Similarly, "a reply memorandum is not a pleading."  *Marshall v. Webster Bank, N.A.,*No.

3:10-cv-908 (JCH), 2011 WL 219693, at *12 (D. Conn. Jan. 21, 2011) (collecting cases). Thus, neither the assertions in defendant's counsel's objection memorandum, nor the Halprin Affidavit attached thereto, is a "pleading" from which the Court might properly strike material under Rule 12(f).

### 2.    Motion to Strike In Context of Summary Judgment

#### a.    Federal Rule 56(c)

Furthermore, even if the Court were to construe the Halprin Affidavit as a "pleading," a motion to strike is improper with respect to summary judgment. "The Federal Rules of Civil Procedure do not explicitly allow motions to strike in the context of summary judgment." *Ferraresso v. Town of Granby*, 646 F. Supp.2d 296, 301 (D. Conn. 2009). Specifically, "Rule 56, which governs summary judgment, does not provide a 'motion to strike' as a tool in the summary judgment process." *Ferraresso*, 646 F. Supp.2d at 301. Rather, Rule 56(c) provides a means to object to inadmissible evidence referenced by the opposing party as follows:

> A party may object that the material cited [by the party's opponent] to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

Fed. R. Civ. P. 56(c). Federal Rule 56(c) thus contemplates that the parties will flag for the court material cited by opposing counsel which is not admissible, and hence not properly considered on summary judgment.

#### b.    Local Rule 56(a)

Under the Local Rule 56(a), when ruling on summary judgment, the court is required to consider only evidence that is admissible. *See* D. Conn. L. Civ. R. 56(a)(1) (court may only consider

statements of fact that are "supported by the evidence"); *Giannullo v. City of New York*, 322 F.3d 139, 142 (2d Cir.2003).[7]   Courts, such as this one,  "undertake this obligation faithfully and fully review the proffered evidence of record and draw appropriate conclusions."  *Ricci*, 2006 WL 2666081, at *3.

As Judge Squatrito noted in *Martin v. Town of Westport*, 558 F. Supp.2d 228, 231 (D.Conn.2008),  "the court knows the difference between admissible and non-admissible evidence, and would not base a summary judgment decision simply upon the self-serving *ipse dixit* of a particular party." Consequently, "[i]f a party wishes to argue that an asserted material fact is not supported by the evidence, that party may do so in its summary judgment briefing." *Id.* (internal quotations and citation omitted).

Because they review and rely only upon admissible evidence on summary judgment, courts within this District have repeatedly denied motions to strike as unnecessary. *See. e.g., Radolf v. Univ. of Conn.*, 364 F. Supp.2d 204, 230 (D. Conn.2005) (denying as moot motions to strike portions of affidavit and Local Rule 56(a) Statement because court did not rely on challenged evidence); *Waananen v. Barry*, 343 F.Supp.2d 161, 172 (D. Conn.2004) (denying motions to strike exhibits and paragraphs of Rule 56(a) Statement as moot because not relied on by court).

Plaintiff's current motion to strike is addressed to the Halprin Affidavit appended to defendant's opposition brief to the pending summary judgment motion.  Doc. #38.   That affidavit is not a "pleading" and thus not properly subject to having its contents stricken pursuant to Federal

---

[7]*See also* D. Conn. L. Civ. R. 56(a)(3) ("Each statement of material fact by a movant in a Local Rule 56(a)1 Statement or by an opponent in a Local Rule 56(a)2 Statement, and each denial in an opponent's Local Rule 56(a)2 Statement**,** must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial").

Rule 12(f).  Furthermore, because the affidavit has been filed in the context of summary judgment,

striking it would be inappropriate *per se*.   On summary judgment, plaintiff has objected to the

contents of the affidavit as inadmissible evidence, Fed. R. Civ. P. 56(c)(2), and  the Court is fully

aware that it must consider only admissible evidence with respect to the pending summary judgment

motion, D. Conn. L. Civ. R.  56(a)(1).   Accordingly, plaintiff's motion to strike (Doc. #40) is

unnecessary and thus DENIED as moot.  Any conclusory, baseless, irrelevant or hearsay statements

contained in the Halprin Affidavit (Doc. #38) shall not be considered by the Court in its ruling on

plaintiff's summary judgment motion.[8]

---

[8]For example, Martin Halprin's conclusory statements regarding what "would be clearly obvious to the representatives of the Colony Insurance Company" and what is "reasonably foreseeable" in connection with a liquor serving establishment ( Doc. #38, ¶¶ 7-8) are disregarded as they state his opinions and are not subject to cross- examination on summary judgment.  *See Monroe v. Board of Ed. of Town of Wolcott, Connecticut*, 65 F.R.D. 641, 650 (D.Conn. 1975) ("conclusory statements of opinion in affidavits [filed in conjunction with summary judgment] are entitled to no weight in the court's deliberative process").  Similarly, the Court gives no weight to Halprin's assertion that defendant "would not have purchased this insurance if [he] had known that there was such an exclusion." Doc. #38, ¶ 11.  Halprin cannot be heard to say that the corporate defendant did not know "there was such an exclusion" because the exclusion was printed in the policy, which defendant accepted.

Quite apart from these considerations, Martin Halprin's account of his conversations with the insurance broker is hearsay and in any event irrelevant to the issues.  Doc. #38, ¶ 9 ("I particularly told the broker that the company wanted full coverage.").   *See Steinberg v. Obstetrics-Gynecological & Infertility Group, P.C.*,  260 F.Supp.2d 492, 494-95 (D.Conn. 2003)("out of court assertion . . . introduced to prove the truth of the matter asserted" is hearsay evidence which is generally inadmissible) (citing Fed. R. Evid. 801(c) & 802).  Moreover, even if Halprin's statement  were not hearsay or fell within a hearsay exception under  Fed. R. Evid. 803, because it is offered to show Halprin's intent with respect to the  agreement under the Colony Policy, it is not relevant under Connecticut law.  Where the language of the contract is clear, the "intent of the parties" for entering the insurance contract must be "derived from the four corners of the policy." *Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co.*, 274 Conn. 457, 463 (2005).

### B.    Standard for Summary Judgment

Plaintiff has moved this Court for summary judgment pursuant to Federal Rule of Civil Procedure 56(c).  The criteria for granting or denying summary judgment are well established. Summary judgment may be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  *See Jacobson v. Metro. Prop. & Cas. Ins. Co.*, 672 F.3d 171, 174 (2d Cir. 2012) ; *accord Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011).  *See also  Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"A material fact is one that might 'affect the outcome of the suit under the governing law,' and a dispute about a genuine issue of material fact occurs if the evidence is such that 'a reasonable [fact-finder] could return a verdict for the nonmoving party.'"  *Madison Nat. Life Ins. Co., Inc. v. Travelers Prop. Cas. Co. of America*, No. 11–1438–cv, 2012 WL 516835, at *1 (2d Cir. Feb. 17, 2012) (quoting  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"In determining whether there are genuine issues of material fact, [the district court is] 'required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'" *Jenkins v. NYS Banking Dep't,* 458 F. App'x 36, 37 (2d Cir. 2012)(quoting  *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir.2003)).  Summary judgment is then  appropriate only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Jenkins*, 458 F. App'x at 37 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The party seeking summary judgment bears the burden of showing entitlement to a summary disposition.  *Anderson*, 477 U.S. at 256; *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005).  The moving party has the burden to establish that there exists no genuine issue of material fact

11

warranting a trial. *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003). To meet that burden, the moving party may show – *i.e.*, point out to the district court – "that there is an absence of evidence to support the nonmoving party's case." *PepsiCo., Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002).

Once the moving party meets its burden, it is incumbent on the opposing party to present sufficient evidence to show that a fact-finder could reasonably find genuine issues of fact. *Anderson*, 477 U.S. at 255. Specifically, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Id.; see also Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir.2002) (quoting *Matsushita Elec.*, 475 U.S. at 586-87); *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir.1984) (nonmoving party must set forth "concrete particulars" showing that a trial is needed). In opposing summary judgment, one "may not rely on mere allegations or denials, but rather must 'cit[e] to particular parts of materials in the record' to demonstrate that a fact is genuinely disputed." *Eaddy v. City of Bridgeport*, No. 09CV1836 (MRK), 2011WL 1399031, at *3 (D. Conn. April 12, 2011) (quoting Fed. R. Civ. P. 56(c)(1)). There must be more than a "scintilla of evidence" in the non-movant's favor. *Anderson*, 477 U.S. at 252. "[C]onclusory allegations," "bald assertions," and "metaphysical doubt" will not suffice. *See, e.g., BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir.1996) (it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts").[9]

---

[9]*See also Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1983) ("Genuine issues of fact are not created by conclusory allegations."); *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991) ("defendants' bald assertion, completely unsupported by evidence, did not satisfy their burden" to overcome properly supported summary judgment motion*); see also Matsushita Elec.*, 475 U.S. at 586 (to avoid summary judgment, a party "must do more than simply

If the evidence is "merely colorable, or is not significantly probative," summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.  Moreover, 'the mere existence of some alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment."  *Id.* at 247-48.

### C.   <u>Declaratory Judgment</u>

In seeking summary judgment, plaintiff requests this Court to render declaratory judgment under the Declaratory Judgment Act ("DJA"), 28 U.S.C. §2201.[10]   An action for declaratory judgment must meet the "case or controversy" requirement in that it "must be sufficiently real and immediate, allowing specific and conclusive relief . . . and be ripe for adjudication." *Pub. Serv. Comm'n v. Wycoff Co., Inc.*, 344 U.S. 237, 244 (1952).   The district court retains discretion under the DJA to determine whether to exercise jurisdiction over the action at issue.  *See, e.g., Dow Jones & Co., Inc. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003).   The court then considers "the litigation as a whole" and whether "practicality and wise judicial administration will predominate." *U.S. Underwriters Ins. Co. v. Kum Gang, Inc.*, 443 F. Supp.2d 348, 352-53 (E.D.N.Y. 2006) (citing *Gianni Sport Ltd., v. Metallica*, No. 00 Civ. 0937(MBM), 2000 WL 1773511, at *4 (S.D.N.Y. Dec. 4, 2000) and *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995)).

---

show that there is some metaphysical doubt as to the material facts").

[10]28 U.S.C. § 2201(a) states in relevant part:

[A]ny court of the United States . . . may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought."

*See also* Fed. R. Civ. P. 57 (stating that "[t]hese rules govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201").

In the case at bar, there are, as plaintiff contends, "bona fide and substantial questions and issues in dispute" among the parties. Doc. #1, p. 6 (¶ 28).  First, there is a dispute as to whether plaintiff insurer must defend Halprin in the underlying action.[11]  Colony maintains that it has no such duty to defend or indemnify based on an "assault and battery" exclusion clause ("Assault and Battery Exclusion ") in its policy with Halprin ("Colony Policy").  Declaratory judgment would thus provide the parties with specific, conclusive relief in resolving whether the Colony Policy in fact excludes coverage for the damages sought in the underlying action.

Furthermore, the issue of coverage under the Colony Policy may not be properly litigated in the underlying action because Colony  is not a named party in that suit.  "When a determination of the duty to defend can be made and thus clarify the insurer's obligations in the underlying tort action, the DJA is properly invoked."  *U.S. Underwriters Ins. Co.,* 443 F. Supp.2d at 353 (citing *Metropolitan Prop. & Liab. Ins. Co. v. Kirkwood*, 729 F.2d 61, 63 (1st Cir. 1984)).  The case at bar is such a case.

### D.      Choice of Law

A federal court sitting in diversity applies the forum state's conflict of law rules to determine which  state's substantive law governs the dispute. *Klaxon Co.  v. Stentor Co.*, 313 U.S. 487, 496 (1941).  For issues of contract interpretation, Connecticut applies the test set forth in the Restatement (Second) of Conflicts of Law ("Restatement") § 188, which, absent an effective choice of law by the parties,  applies the law of the state with the "most significant relationship" to the transaction and

---

[11]Colony has retained the Pellegrino Law Firm and is currently defending Halprin in the underlying action under a "complete reservation of rights."  Doc. #1, p. 6 (¶ 27).

the parties. [12]   *Reichold Chems. Inc. v. Hartford Accident and Indem. Co.,* 252 Conn. 774, 781 (2000) (a/k/a "*Reichold II*").

With respect to liability insurance contracts in particular, Connecticut recognizes a rebuttable presumption in favor of the state "where the insured risk is located." *Reichold II*, 252 Conn. at 782 (citing § 193 of the Restatement (Second), recognizing rebuttable presumption in favor of applying law of state "which the parties understood was to be the principal location of the insured risk"). *See also Lumbermens Mut. Cas. Co. v. Dillon Co. Inc.*, No. 3:98–CV–2013 (EBB), 2000 WL 1336498, at *2-3 (D. Conn. Aug. 31, 2000) (applying *Reichold II* to hold "'most significant interest' test mandates that, in the absence of *extraordinary* circumstances, the law of the state where the principal insured risk is located will apply").

The Court will apply the law of the State of Connecticut to this liability insurance policy because Connecticut has the "most significant interest" in this policy.   Applying *Reichold II*, Connecticut is the location of  the subject matter (*i.e.,* the Catwalk Property in New Haven, Connecticut) and thus the risk of liability covered by the contract.    In further support, and in accordance with the traditional factors set forth in Restatement § 188, Connecticut is the place where the contract was entered into and executed (through agent Joseph A. Krar, of Southington, Connecticut) (Doc. #27-2, Ex. B, p. 45), and the location where the remaining defendant is incorporated and has its principal place of business.   Although the parties make no reference to

---

[12]Section 188 lists five relevant contacts to be considered when determining which state has the "most significant relationship" to the contract:  "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties."  Restatement (Second) Conflicts of Laws § 188 (2)(e).  Section 188 also incorporates by reference seven  more generalized choice-of-law principles.

"choice of law" in their memoranda on the present motion, both Colony and Halprin cite Connecticut case law throughout, thereby acknowledging that Connecticut law governs this case.

### E.   Construction of Insurance Policy Under Connecticut Law

Under Connecticut law, the scope of coverage provided by and applicability of an insurance policy is appropriate for resolution at the summary judgment stage. *Moore v. Continental Cas. Co.*, 252 Conn. 405 (2000).   Moreover, "[c]onstruction of a contract of insurance presents a question of law for the court . . . ."  252 Conn. at 409 (citing *Pacific Indem. Ins. Co. v. Aetna Cas. & Sur. Co.*, 240 Conn. 26, 30 (1997)).

In Connecticut, insurance policies are construed according to general rules of contract interpretation.   *Liberty Mut. Ins. Co. v. Lone Star Indus., Inc.*, 290 Conn. 767, 795 (2009). Contracts are thus "enforced in accordance with the parties' intent, as derived from the plain and ordinary meaning of the policy's terms."  *Allstate Ins. Co. v. Quito*, No. 3:06cv1671 (PCD), 2007 WL 2221163, at *3  (D. Conn. Aug. 2, 2007) (citing *Ohio Cas. Ins. Co. v. Dentek, Inc.*, 283 F. Supp. 2d 655, 659 (D. Conn. 2003)).   The primary rule is that "the Court must read the policy language as a layman, rather than [as] an experienced underwriter" and should not "torture words to import ambiguity" where none exists.  *Jurrius v. Maccabees Mut. Life Ins. Co.*, 587 F. Supp.1301, 1305 (D.Conn. 1984)*. See also Allstate Ins. Co.*, 2007 WL 2221163, at *3 ("If a provision in an insurance policy is susceptible of two or more reasonable interpretations, that ambiguity will be resolved in favor of the insured; however, when the language is clear, no such construction is applied.").

It is well settled that "exclusions from insurance policy coverage are given strict construction."  *Kimmins Indus. Serv. Corp. v. Reliance Ins. Co.*, 19 F.3d 78, 81 (2d Cir. 1994). *See*

*also State of New York v. Blank*, 27 F.3d 783, 788  (2d Cir.1994); *U.S. Underwriters Ins. Co. v. Kum Gang, Inc.,* 443 F. Supp. 2d 348, 356 (E.D.N.Y. 2006).   Policy exclusions are interpreted in a manner most beneficial to the insured.  *MH Lipiner & Son, Inc. v. Hanover Ins. Co.*, 869 F.2d 685, 687 (2d Cir. 1989).  Any "ambiguous words or phrases in an insurance policy are construed strictly against the insurance company and in favor of coverage." *Clinton v. Aetna Life & Sur. Co.*, 41 Conn. Supp. 560, 563 (Conn. Super. Ct. 1991) (citing  G. Richards, Law of Insurance (6th Ed. Freedman) § 11.2(f),  ¶¶ 250-51); *accord McCauley Enterprises, Inc. v. New Hampshire Ins. Co.*, 716 F. Supp.718, 720 (D. Conn. 1989).  "The test of coverage is not what the insurer intended to cover but what a reasonable person in the position of the insured would understand to be covered." *Clinton*, 41 Conn. Supp. at 563 (citation omitted).

Focusing on the insurer's duty to defend, the Connecticut Supreme Court set forth the proper analysis of the policy's language in *Hartford Cas. Ins. Co. v. Litchfield  Mutual Fire Ins. Co.*, 274 Conn. 457  (2005) :

> It is the function of the court to construe the provisions of the contract of insurance . . . . The [i]nterpretation of an insurance policy . . . involves a determination of the intent of the parties as expressed by the language of the policy . . . [including] what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . [A] contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy . . . [giving the] words . . . [of the policy] their natural and ordinary meaning . . . [and construing] any ambiguity in the terms . . . in favor of the insured . . . .

274 Conn. at 463 (ellipses in original) (internal citations and quotations omitted).  *Accord Taylor v. Mucci*, 288 Conn. 379, 383 (2008) ("If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning. . . .   Under those circumstances, the policy is to be given effect according to its

terms.") (internal quotations and citations omitted).

After examining the words contained in the "Assault and Battery Exclusion" of the Colony Policy, the Court concludes that the language is clear and unambiguous.  It excludes coverage for all damages due to "bodily injury," "property damage," and "personal and advertising injury" that arise out of  or result from "Assault and Battery committed by any person."  Doc. #27-2, p. 18. Giving these words their natural and ordinary meaning, one concludes that the parties intended to exclude coverage for damages arising from any act of "assault and battery," regardless of the identity of the actor (*i.e.*, "committed by  any person").  The exclusion also broadly includes the "failure to suppress or prevent"  assault and battery;  the "failure to provide an environment safe from assault and battery or failure;" the failure "to warn of the dangers of the environment which could contribute to assault and battery;" the "negligent hiring, supervision, or training of any person;" and the "use of any force to protect persons or property whether or not the 'bodily injury' or 'property damage' was intended from the standpoint of the insured or committed by or at the direction of the insured." Doc. #27-2, Ex. B, p. 18, , § 1 (¶¶ 1-5).   In sum, absent torturing any language to create more than one interpretation, the meaning of the "assault and battery" exclusion is clear.  A reasonable insured would understand that damages resulting from assault and battery would not be covered by the policy.

The inquiry into the scope of Colony's duty to defend is not, however,  complete upon the interpretation of  the policy's language.  Rather, it is incumbent on the Court to examine the factual allegations contained in the complaint in the underlying action (Doc. #27-1).  The issue is whether the facts alleged in that complaint bring the injuries within the policy's coverage.  If the complaint might possibly set forth a cause of action within coverage, Colony has a duty to defend Halprin.  *See*

Part IV.G., *infra*.  In the present circumstances, where the policy's language expressly excludes coverage for bodily injuries and property damage caused by assault and battery, Colony will have no duty to defend or indemnify Halprin if the causes of action in the Myrick Action complaint all describe  injuries to Ensley E. Myrick, Joseph E. Reed, and Anthony Perelli  resulting from assault and battery.  Eventually, therefore, the Court must turn to and parse the factual allegations contained in the complaint in the underlying action.

**F.**    **Defendant's Arguments in Opposition to Summary Judgment**

Before examining the particular allegations of the complaint in the Myrick Action to determine whether there is a duty to defend under the Colony Policy, the Court considers the arguments made by defendant which challenge the validity of the assault and battery exclusion.

In opposition to plaintiff's motion for summary judgment, defendant first alleges a lack of knowledge regarding the "assault and battery" exclusion.  Specifically, in its brief on this motion, defendant contends that the exclusion  was "buried in the policy" and never mentioned to Martin Halprin, defendant's agent in negotiating the policy.  Doc. #37, p. 2.  Defendant further alleges that, through its agent, it sought "full coverage" of the Catwalk premises, such that had defendant known of the  "assault and battery" exclusion, defendant would not have purchased the policy.  *Id.*

The Court finds such an argument lacking both in credibility and merit.  Defendant itself concedes that  the "assault and battery" exclusion was plainly included within the written language of the policy at Form U006 (07-02).   *Id.*, p. 2 n. 1 (form "as delivered to Defendant does include a list of exclusions, including mention of U006-0702 Assault and Battery Exclusion").  In the Colony Policy, "ASSAULT AND BATTERY EXCLUSION" is printed in bold-faced capital letters at the

top of the page under the instruction, "THIS ENDORSEMENT CHANGES THE POLICY.

PLEASE READ IT CAREFULLY." Doc. #27-2, p. 18.   Despite such noticeable language, agent

Martin Halprin claims he never saw this exclusion and that it was "buried in the policy." Doc. #37,

p. 2.

"In Connecticut, the fact that a party signed a written agreement is usually conclusive

evidence of contract formation."   *D'Antuono v. Service Road Corp.*,789 F.Supp.2d 308, 323

(D.Conn. 2011).   "The general rule is that where a person of mature years, who can read and write,

signs or accepts a formal written contract affecting his pecuniary interests, it is his duty to read it,

and notice of its contents will be imputed to him if he negligently fails to do so."[13] *Ursini v.*

*Goldman*, 118 Conn. 554, 562, 173 A. 789 (1934). *Accord Delk v. Go Vertical, Inc.*, 303 F.Supp.2d

94, 99 (D.Conn. 2004). This "duty to read rule derives from the objective theory of contracts, under

which one party to a contract must be permitted to rely on the manifested assent demonstrated by the

other party's signature (or action) without fear that the latter may subsequently void the contract by

claiming failure to read or understand."[14]   *Allied Office Supplies, Inc. v. Lewandowski*, 261

---

[13]Although "there is an exception to that general rule when something has 'been said or done to mislead the person ... or to put a [person] of reasonable business prudence off his [or her] guard in the matter," *Ursini,* 118 Conn. at 562, defendant has made no allegations in this case that Colony took any action to mislead or misinform Halprin. Rather, defendant merely contends that Colony made no mention of the "Assault and Battery Exclusion" before Halprin signed the policy. Doc. #38, ¶ 10. Because no facts indicate that anything was said or done to mislead Halprin, the exception does not apply in the present case. *See, e.g.*, *Delk v. Go Vertical, Inc*., 303 F. Supp.2d 94, 100–01 (D.Conn. 2004) (finding no evidence that the plaintiff had been misled or had been put off his guard at the time when he signed the agreement at issue).

[14]"Connecticut courts have repeatedly held that plaintiffs cannot escape the consequences of a waiver into which they voluntarily entered merely by establishing that they did not read it." *Delk*, 304 F.Supp.2d at 99 (citing *Fischer v. Rivest*, No. X03CV000509627S, 2002 WL 31126288, 2002 Conn.Super. LEXIS 2778, at *31 (Conn. Super. Ct. Aug. 15, 2002)).

F.Supp.2d 107, 112 (D.Conn. 2003). *See also generally* 7 Perillo, Joseph M., Corbin on Contracts §§ 29.8–29.12 (Rev. ed. 2002).

Thus, ignorance of and/or failure to read the terms of a written insurance policy does not invalidate the policy's terms. Although insurance policies generally contain numerous pages and attachments, a prospective insured is obligated to read the contents of the policy prior to signing the policy or risk contracting to what he deems "unknown" (*i.e.*, unread) terms. Otherwise, memorializing an insurance policy in writing would be a futile task:   futile if an insured could simply claim ignorance of any written provision to avoid its application. The law does not sanction such an exercise.

In the case at bar, the "Assault and Battery Exclusion" is plain on the face of the "Colony Policy. Doc. #27-2. As stated *supra*, the title appears in bold-faced, capital letters and the language of the exclusion appears in type consistent with the remainder of the policy.   It is hard to imagine how one reading the policy might miss the assault and battery exclusion or deem it "buried" within the policy.   Martin Halprin, as agent for the defendant, had a duty to read the exclusion prior to signing the Colony Policy.   The fact that he may have missed the relevant pages does not void the terms of the exclusion.

Furthermore, with respect to the defendant's intent in entering an insurance contract, the Connecticut Supreme Court has made clear that where the language in a policy is unambiguous, as it is here, the Court must determine the intent of the parties "as expressed by the language of the policy," including what coverage the insured expected to receive and what the insurer was to provide, *as disclosed by the provisions of the policy*." *Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co.*, 274 Conn. 457, 463 (2005) (emphasis added).   In such circumstances, "the intent of the

parties" for entering the insurance contract must be "derived from the four corners of the policy." *Id.*

Defendant counters, however, that the language of the assault and battery exclusion  "is not perfectly clear" because "[n]owhere in the policy is the word 'person' defined."  Doc. #37, p. 6. Defendant thus argues that "person" in the assault and battery exclusion could not have actually meant "any person," but must have meant someone who was under the control of the defendant landlord – *i.e.*, not a trespasser, such as Hill allegedly was in the Catwalk parking lot at the time of the shootings at issue.  *Id.*, p. 6.  Otherwise, defendant contends, "the 'protection' offered under the policy is simply a sham."  *Id.*

The Court disagrees.    First, the language of the exclusion is unambiguous.  Unless one subjects the policy's language to torture, the word "person" is clearly not "susceptible of two interpretations" in the "assault and battery" exclusion.[15]   The policy excludes coverage for damages or expenses due to 'bodily injury,' 'property damage' or 'personal and advertising injury'  arising out of or resulting from: . . . Assault and Battery committed by *any person."*   Doc. #27-2, p. 18 (emphasis added).   "Person," which has a natural and ordinary meaning of "human being" or "individual," is preceded and explicitly modified by the adjective "any."[16]  Clearly, "person" in that context means "*any* person," which suggests "person" without restriction – *i.e.*, every person and/or

---

[15]*Cf.  Allstate Ins. Co. v. Barron,* 269 Conn. 394, 406 (2004)  (explaining that "[w]hen the words of an insurance contract are, without violence, susceptible of two interpretations, that which will sustain the claim and cover the loss must, in preference be adopted . . .).

[16]*See* Black's Law Dictionary (9th ed. 2009) (defining person as "[a] human being").

all persons.[17]

Second, similar language, excluding assault and battery by listed persons and "any other *person*," has been upheld as unambiguous and enforceable on two occasions by the Connecticut Supreme Court. *See Clinch*, 110 Conn. App. at 40 ("examining the words of the exclusions at issue in this case and according the words of the policies' exclusions their natural and ordinary meaning, we conclude that, as in *Kelly*, it was the intent of the parties, the defendant and the insured, to exclude *all assaults and batteries* from coverage")(emphasis added), *aff'd,* 293 Conn. 774, 777-78 (2009); *Kelly*, 223 Conn. at 37 ("The exclusion clause is not ambiguous. The words at issue do not have multiple definitions.").

Defendant also argues that there was "a lack of consideration" for the Colony Policy because there was no express reduction of premium related to the assault and battery exclusion. Doc. #37, p. 6 ("there is no . . . recitation [of reduced premiums] with respect to the exclusion for assault and battery;" and "in the absence of consideration, an executor promise is unenforceable"). In support of this argument , defendant cites the opening phrase of the exclusion clause for "assault and battery" in *Clinch v. Generali -U.S. Branch*, 110 Conn. App. at 36 n.3 (stating that "[i]n consideration of the reduced premium charge, it is understood that this insurance does not apply to bodily injury, personal injury or property damage arising out of assault or battery").

Rather than conceding that it received value for the coverage provided by the Colony Policy,

---

[17]Moreover, the language of the exclusion itself demonstrates that "person" was not restricted to those within the control of the defendant because that language explicitly excluded from coverage "[t]he use of any force to protect persons or property *whether or not* the " bodily injury" or "property damage" *was intended from the standpoint of the insured or committed by or at the direction of the insured.*" Doc. #27-2, Ex. B, p. 18, , § 1 (¶-5). From the face of the language, defendant's control of the actor and intent or lack thereof with respect to commission of the assault or battery are irrelevant for purposes of the exclusion.

defendant focuses solely on the assault and battery exclusion to argue that, unless there was a premium deduction for this particular exclusion, defendant received no consideration for its bargain.[18]   However, defendant fails to cite, nor is the Court aware of, any authority rendering the terms of an insurance policy exclusion invalid due to the insurer's failure to itemize a corresponding reduction in premium.   Furthermore, the Colony Policy contains numerous exclusions in addition to the "Assault and Battery Exclusion," and none of these exclusions mentions a resulting reduction in premium.[19]   Defendant does not contest the validity of these other exclusions.   Moreover, the Connecticut Supreme Court has examined and upheld as valid an assault and battery exclusion which contained no language regarding consideration or reduced premiums.   *Kelly*, 223 Conn. at 35.

In sum, defendant has failed to present any facts, circumstances, or law to bar application of or invalidate the "assault and battery" exclusion.   The language of the exclusion is unambiguous

---

[18]Defendant makes much of the special election form  regarding exclusion of coverage for "Certified Acts of Terrorism," noting with dissatisfaction that there was no such special form for "assault and battery" to provide defendant with notice of the latter exclusion.  Doc. #37, p. 1-2, & n.1; *see also* Doc. #27-2, p. 10-11 ("Certified Acts of Terrorism and Other Acts of Terrorism Exclusion").  However, the election form regarding terrorism is the direct result of federal statute, the Terrorism Risk to Insurance Act of 2002 ("TRIA"), Pub.L. 107–297, 116 Stat. 2322.  As Judge Denny Chin explained, "The TRIA prohibits exclusions for certain 'Acts of Terrorism' from insurance policies for a limited time period during which insurers were required to notify their insured of the availability of and rates for insurance coverage for "Acts of Terrorism.'"  *Omni Berkshire Corp. v. Wells Fargo Bank, N.A.*, 307 F.Supp.2d 534, 537 (S.D.N.Y. 2004).  The TRIA has no bearing on the "assault and battery" exclusion at issue.  In the absence of a federal or state statute requiring a specific form with respect to an  "assault and battery" exclusion, defendant's argument fails.

[19]*See* Doc. #27-2, p. 13 (nuclear energy liability exclusion), p. 16 (hazardous materials exclusion), p. 17 ("miscellaneous" exclusions); p. 20 (employment-related practices exclusion), p. 21 (absolute auto, aircraft and watercraft exclusions), p. 40 (war liability exclusion), & p. 42 (fungi or bacteria exclusion).

and plain in its meaning.  Upon the signing and acceptance of the Colony Policy by Halprin or on

its behalf, full knowledge of the policy's terms and conditions are imputed to Halprin and are

binding upon it, including the assault and battery exclusion.   If the Myrick Action contains

allegations that fall within the assault and battery exclusion, plaintiff is entitled to  judgment that it

has no duty to defend as a matter of law.   *See* Fed. R. Civ. P. 56(c).


**G.     Insurer's Duty to Defend Under Connecticut Law - Determined by the Allegations in the Underlying Complaint**

Under the governing law of Connecticut, the Connecticut Supreme Court has indicated that

an insurer's duty to defend is determined by the allegations contained in the underlying complaint.

*Hartford Cas. Ins. Co. v. Litchfield Mutual Fire Ins.*, 274 Conn. 457, 463 (2005).  The Connecticut

Supreme Court in *Hartford Cas. Ins. Co.*  thus summarized as follows:

> In construing the duty to defend as expressed in an insurance policy, [t]he obligation
> of the insurer to defend does not depend on whether the injured party will
> successfully maintain a cause of action against the insured but on whether he has, in
> his complaint, stated facts which bring the injury within the coverage. If the latter
> situation prevails, the policy requires the insurer to defend, irrespective of the
> insured's ultimate liability. . . . It necessarily follows that **the insurer's duty to
> defend is measured by the allegations of the complaint.** . . .   Hence, if the
> complaint sets forth a cause of action within the coverage of the policy, the insurer
> must defend.

274 Conn. at 463 (emphasis added; internal citations and quotations omitted); *see also  Stamford*

*Wallpaper Co. v. TIG Ins.*, 138 F.3d 75, 79 (2d. Cir. 1998) (the existence of a duty to defend is based

solely on the information and allegations contained "within the four corners of the complaint").

Whether the plaintiff has a duty to defend depends on whether, in light of the policy

language, the complaint in the underlying action alleges conduct for which coverage was provided.

*Imperial Cas. and Indem. Co. v. State*, 246 Conn. 313, 323 (1998).  *See also Missionaries of the*

25

*Co. of Mary, Inc. v. Aetna Cas. & Sur. Co.*, 155 Conn. 104, 110 (1967).  "The duty to defend an insured arises if the complaint states a cause of action which appears on its face to be within the terms of the policy coverage.  Because the duty to defend has a broader aspect than the duty to indemnify . . . , [i]f an allegation . . . falls even *possibly* within the coverage, then the insurance company must defend the insured."  *Imperial Casualty and Indem. Co.*, 246 Conn. at 323-24 (internal quotations and citations omitted; emphasis in original).  *Accord West Haven v. Commercial Union Ins. Co.*, 894 F.2d 540, 544 (2d Cir.1990) ("The general rule is [that] if an allegation of the complaint falls even possibly within the coverage, then the insurance company must defend the insured.") (citations and internal quotation marks omitted) (applying Connecticut law).[20]

"On the other hand, if the complaint alleges a liability which the policy does not cover, the insurer is not required to defend."  *Community Action for Greater Middlesex County, Inc. v. Am. Alliance Ins.*, 254 Conn. 387, 399 (2000).   *See also QSP, Inc. v. Aetna Cas. & Sur. Co.*, 256 Conn. 343, 354 (2001); *Springdale Donuts, Inc. v. Aetna Cas. & Sur. Co.*, 247 Conn. 801, 807-08 (1999); *Smedley Co. v. Employers Mut. Liab. Ins. Co.*, 143 Conn. 510, 517 (1956).  That is also the square holding of the Second Circuit in *Stamford Wallpaper Co.*, 138 F.3d at 79 (construing Connecticut law).

---

[20]*See also Community Action for Greater Middlesex County, Inc. v. Am. Alliance Ins. Co.,* 254 Conn. 387, 398 (2000) ("the insurer's duty to defend is measured by the allegations of the complaint . . . Hence, if the complaint sets forth a cause of action within the coverage of the policy, the insurer must defend");  *Flint v. Universal Mach. Co.*, 238 Conn. 637, 646 (1996) ("The obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage."); *Keithan v. Massachusetts Bonding & Ins. Co.*, 159 Conn. 128, 138 (1970) ("an insurer's duty to defend . . .is determined by reference to the allegations contained in the [underlying] complaint" )*; Clinch*, 110 Conn. App. at 34 ( "it is the claim which determines the insurer's duty to defend").

In reviewing the complaint, Connecticut courts have long "eschewed the notion that pleadings should be read in a hypertechnical manner." *Clinch v. Generali-U.S. Branch*, 110 Conn. App. 29, 37 (2008), *aff'd,* 293 Conn. 774, 777-78 (2009).  Thus, the Court must read the complaint "in a manner that advances substantial justice," construing it "reasonably" to contain all that it may "fairly mean."  110 Conn. App. at 37.   On the other hand, "it must not be contorted in such a way so as to strain the bounds of rational comprehension." *Id.*

In the present case, the Court finds the case of  *Clinch v. Generali-U.S. Branch* particularly helpful in interpreting the scope of an "assault and battery" exclusion when the complaint contains allegations of negligence.  *Id.*   In that action, the Connecticut Supreme Court affirmed *per curiam* the Connecticut Appellate Court's decision that an insurer had no duty to indemnify its policyholder in an underlying action based on assault and battery exclusions contained in both the insurer's general liability and liquor liability policies.  As in the underlying Myrick Action, the plaintiff in *Clinch* was a restaurant patron who was injured in an altercation that took place on the premises of a restaurant.  Specifically, the plaintiff therein alleged that, first  inside the restaurant and then, upon ejection into  the parking lot, he was struck in the head by three men who were under the influence of alcohol.[21]

Plaintiff Clinch commenced an action against the restaurant, including its financial backers and  owners, which then tendered the claim to the restaurant's liability  insurer, Generali-U.S. Branch.  The insurer denied coverage and refused to defend.  The trial court rendered judgment in favor of the plaintiff against the insurer and one of its employees in the amount of $320,609.85 plus

---

[21]In particular,  plaintiff alleged that he was struck in the back  of his head, causing him to fall, strike the ground, and suffer further injuries.  *Clinch*, 110 Conn. App. at 30.

costs.  Because judgment was not satisfied within thirty days after it was rendered, plaintiff thereafter proceeded directly against the insurer, pursuant to Connecticut's direct action statute, Conn. Gen. Stat.  § 38a-321, as a judgment creditor subrogated to the rights of the insured.  The court in the direct statute action granted summary judgment in favor of the insurer, finding  that the relevant policies'  "assault and battery" exclusion operated to exclude coverage.

Plaintiff Clinch appealed, arguing that one of the counts in his complaint, when read in isolation, did not fall within the exclusion.  Specifically, Clinch noted that in one count he alleged that the restaurant was not maintained in a reasonably safe condition, and reasoned that in consequence his complaint did not allege that *all*  his injuries were caused by being punched or struck.  Plaintiff further argued that he did not use the terms "assault" and/or "battery" in his complaint and that the language of the "assault and battery" exclusion was ambiguous because the terms "assault" and "battery" were not defined.   The appellate court rejected all three arguments, holding that one must read the complaint as a whole. In so doing, the only cause of action alleged was for injuries arising from an assault and battery resulting from the insured's negligence.[22] Accordingly, the appellate court held that the "assault and battery" exclusion in both the general liability policy and the liquor liability policy precluded plaintiff's recovery.

Clinch petitioned the Connecticut Supreme Court for certiorari review of the Appellate Court's ruling. The Connecticut Supreme Court upheld the Connecticut Appellate Court's entry of

---

[22]The  Connecticut  Appellate  Court  also  clarified  that the policies' failure to define the terms "assault" and "battery" did not render the policies ambiguous.   "In examining the words of the exclusions at issue in this case and according the words of the policies' exclusions their natural and ordinary meaning," the court "conclude[d] that . . . it was the intent of the parties, the defendant and the insured, to exclude *all* assault and batteries from coverage." 110 Conn. App. at 40 (emphasis added).

summary judgment for the insurer in its entirety, stating that the "issue [on appeal] was resolved properly in the Appellate Court's concise and well reasoned opinion." 293 Conn. at 777. Moreover, "[b]ecause that opinion fully addresse[d] all arguments" raised on appeal, the Supreme Court "adopt[ed] it as a proper statement of the issue *and the applicable law* concerning that issue." *Id.* (emphasis added). The Connecticut Supreme Court thus affirmed that all of plaintiff's claims of negligence against the insured arose from assault and battery within the meaning of the insured's policies' exclusion for assault and battery. Moreover, the failure to define the terms "assault" and "battery" in the exclusion did not render the policy ambiguous. Accordingly, the "assault and battery" exclusion in the policy relieved the insurer of any duty to defend the insured against any of the plaintiff's allegations of negligence. *Id.* at 777-78. *See also Kelly v. Figueiredo*, 223 Conn. 31, 37 (1992) (with respect to underlying action for damages from alleged stabbing by intoxicated patron in restaurant, the court "could say with a high degree of certainty that the exclusion clause [for assault and battery in the policy at issue] was intended to exclude all assaults and batteries from coverage.").[23]

---

[23]As the Connecticut Appellate Court concluded in *Clinch,* referencing *Kelly v. Figueiredo*:

> In examining the words of the exclusions at issue in this case and according the words of the policies' exclusions their natural and ordinary meaning, we conclude that, as in *Kelly*, *it was the intent of the parties, the defendant and the insured, to exclude all assaults and batteries from coverage*. Thus, we conclude that the assault and battery exclusions are not ambiguous and that, having already determined that the plaintiff's claims were ones alleging assault and battery, the exclusions are applicable to the plaintiff's claims. Therefore, the defendant had no duty to defend, and the court properly rendered summary judgment in favor of the defendant.

110 Conn. App. 29, 40 (2008) (emphasis added), *aff'd,* 293 Conn. 774, 777-78 (2009) (*per curiam*).

### H.    Myrick Action Allegations

In the underlying Myrick action, Myrick, Reed, and Perelli allege that, at approximately 1:40 a.m. on June 11, 2008, Halprin and Catwalk failed to prevent Hill from shooting and fatally injuring Ensley Myrick and Joseph Reed, business invitees, in the parking lot of the Catwalk restaurant. Doc. #27-1, Myrick Complaint, First to Fourth Counts, ¶¶ 18-21.   Moreover, the Myrick Action plaintiffs allege that Halprin and Catwalk failed to prevent Hill from shooting at Anthony Perelli, also a business invitee in the Catwalk parking lot that evening, causing Perelli to sustain various injuries while fleeing for his life.[24]  *Id.*, Third & Fourth Counts, ¶¶ 18-22.

Specifically, the Myrick Action plaintiffs maintain that Halprin and Catwalk negligently failed to secure, maintain, supervise, and/or inspect Catwalk's parking lot, to prevent the illegal sale and consumption of narcotics and alcohol in said parking lot, and to properly train Catwalk's security personnel.  *Id.*, First to Third Counts, ¶ 21; Fourth to Sixth Counts, ¶ 22.   Those plaintiffs assert that, as the result of negligence, Halprin and Catwalk failed to "stop and prevent physical violence" (*i.e.*, the shootings by Hill) in the Catwalk parking lot on June 11, 2008.  *Id.*, First to Third Counts, ¶ 21(l); Fourth to Sixth Counts, ¶ 22(l).   Furthermore, plaintiffs seek damages directly from Hill for the shootings at issue.  *Id.*, Seventh to Twelfth Counts.   They contend that Hill either "intentional[ly]" or by "negligence and carelessness" shot at Ensley Myrick, Joseph Reed, and Anthony Perelli in the Catwalk parking lot on June 11, 2008.  *Id.*, Seventh to Twelfth Counts, ¶ 14.

In light of the Connecticut Supreme Court's ruling in *Clinch v. Generali-U.S.*, 293 Conn.

---

[24]Such alleged injuries to Perelli include "[m]uscular sprains and strains;" "[b]ruises, contusions, lacerations;" and "[f]ear of death and grievous bodily harm." Doc. #27-1, Ex. A (Myrick Complaint), Third Count ¶ 22(a)-(c), p. 27.

30

774, 777-78 (2009) (*per curiam*) the allegations of the Myrick plaintiffs, when viewed as a whole, seek damages for injuries arising from an assault and battery which allegedly resulted from the insured's negligence. Namely, the Myrick plaintiffs seek recovery for the shooting deaths of the Myrick and Reed decedents and injuries to Perelli, all resulting from alleged gunshots by Hill on June 11, 2008. The fact that these plaintiffs base their action on the negligence of Halprin in its control and management of the premises does not alter the primary cause of all such damages – assault and battery, that is, gunshots by Hill. Consequently, pursuant to the "Assault and Battery Exclusion" of the policy at issue, Colony has no duty to defend Halprin in the Myrick action for damages resulting from the alleged gunshots by Hill on June 11, 2008, in the parking lot of the Catwalk.[25]

## I.      No Duty to Indemnify

Plaintiff Colony also seeks a declaratory judgment that it has no duty to indemnify Halprin for any judgment arising from the claims in the underlying action. Doc. #1, Doc. #26, p.3. Connecticut law holds that the duty to defend is much broader than the duty to indemnify. *Middlesex Mut. Assur. Co. v. Rand*, No. CV 9576644, 1996 WL 218698, at *3 (Conn. Sup. Ct. April 4, 1996). *See also Clinton v. Aetna Life and Sur. Co.,* 41 Conn. Supp. 560, 563 (Conn. Sup. Ct. 1991) ("The

---

[25]It is the allegations in the Myrick Action complaint that are determinative and not the merits of those allegations. The key is what the plaintiffs in the underlying action might be able to prove, not will prove. The ultimate success of the underlying action is irrelevant for determining whether the insurer has the duty to defend. *See, e.g.*, *QSP, Inc. v. Aetna Cas. & Sur. Co.*, 256 Conn. 343, 352 (2001) (for purposes of determining insurer's duty to defend, the allegations in the complaint prevail – *i.e.*, it is irrelevant whether "facts outside the four corners of [the complaint] . . . indicate that the claim may be meritless or not covered"); *see also Imperial Cas. and Indem. Co. v. State*, 246 Conn. 313, 323-24 (1998) ("Because [t]he duty to defend has a broader aspect than the duty to indemnify and does not depend on whether the injured party will prevail against the insured.") (internal quotations and citation omitted).

31

duty to defend is both separate and distinct from, and broader than, the duty to indemnify.")(citing *Martin v. Brunzelle*, 699 F. Supp. 167, 168 (N.D. Ill.1988).   It thus follows that where no duty to defend exists, there is no duty to indemnify.  *DaCruz v. State Farm & Cas.,* 268 Conn. 675, 688 (2004) ("Because the duty to defend is significantly broader than the duty to indemnify, where there is no duty to defend, there is no duty to indemnify, given the fact that the duty to defend is broader than the duty to indemnify.") (quoting *QSP, Inc. v. Aetna Cas.& Sur. Co.*, 256 Conn. 343, 382 (2001)).   *Accord EAD Metallurgical, Inc. v. Aetna Cas. & Sur. Co.*, 905 F.2d 8, 11 (2d Cir.1990) (no duty to defend necessarily means no duty to indemnify).  Because Colony has no duty to defend Halprin in the underlying action, it also has no duty to indemnify Halprin for any damages arising from that action.

## V.   <u>CONCLUSION</u>

In the case at bar, there is no genuine issue of material fact and plaintiff is entitled to judgment as a matter of law.   The parties entered into a contract for insurance covering the Catwalk Property and that policy contained a clear and unambiguous exclusion for all bodily  injuries and property damages resulting from "Assault and Battery committed by any person."  Doc. #27-2, p. 18.   Applying the natural and ordinary meaning of that exclusion provision, a reasonable insured would clearly comprehend that any liability resulting from assault and battery was not covered by the policy.

Moreover, an examination of the four corners of the complaint in the underlying state action reveals that the complaint  sets forth no possible claim that is covered under the language of the Colony Policy.  That complaint seeks damages that all arise out of the alleged firing of gunshots by Markease Hill, which resulted in the deaths of the Myrick and Reed decedents and injuries to

Perelli.  In so firing,  Hill has allegedly committed " assault and battery," for which coverage is explicitly excluded under the Colony Policy.

Having found no genuine issue of material fact warranting a trial of this matter, the Court GRANTS Plaintiff's Motion for Summary Judgment (Doc. #26) and, accordingly, shall enter a declaratory judgment in Colony's favor as a matter of law.

The Court thus hereby DECLARES and ADJUDGES that Plaintiff Colony Insurance Company has no duty to defend or indemnify defendant Jack A. Halprin, Inc. in *Rochelle Myrick, Administratrix of the Estate of Ensley E. Myrick, et al. v. Jack A. Halprin, Inc., et al.,* Docket No. NNH-CV10-5033401-5.  The Clerk is directed to enter judgment for the plaintiff and close the file.

It is So Ordered.

Dated: New Haven, Connecticut
           July 11, 2012


                                        */s/Charles S. Haight, Jr.*
                                        Charles S. Haight, Jr.
                                        Senior United States District Judge

33